■ In the Matter of SECURITIES RESEARCH SERVICES, INC., Appellant. LILLIAN ROBERTS, as Commissioner of Labor, Respondent.—Casey, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed April 19, 1985.

Securities Research Services, Inc. (Securities) maintains a listing of individuals, known as consultants, who have expertise in various fields of the banking and securities industry. When a client has a need for the services of a consultant, Securities selects the appropriate individual and sends him to the client for an interview. Both the client and the consultant are free to reject the offer. The consultant works at the client's premises and the consultant's activities are directed by the client. The Unemployment Insurance Appeal Board, in adopting the findings and conclusions of the Administrative Law Judge, found that Securities does not exercise direction and control over the consultants. Nonetheless, the Board found an employer-employee relationship on the basis of the similarity between the instant case and that of the ordinary employment agency situation, citing *Matter of Rinaldi (General Off. Serv. Bur.—Corsi)* (281 App Div 1051, *lv denied* 306 NY 982). There must be a reversal.

The linchpin of the employer-employee relationship is the reservation of control and direction to the employer *(Matter of Villa Maria Inst. [Ross],* 54 NY2d 691). Hence, it has been said that "[a] determination that an 'employer-employee' relationship exists must rest upon evidence that [the employer] exercises control over the results produced by its salespersons or the means used to achieve the results" *(Matter of 12 Cornelia St. [Ross],* 56 NY2d 895, 897), and control over the means has been described as "the more important factor to be considered" *(Matter of Ted Is Back Corp. [Roberts],* 64 NY2d

725, 726). "Thus, incidental control over the results produced without further indicia of control over the means employed to achieve the results will not constitute substantial evidence of an employer-employee relationship" *(id.)*. In those cases involving professional services which do not lend themselves to control over the details of the work and the results produced, the Board's determination of an employer-employee relationship will be sustained if it is "supported by substantial evidence of control over important aspects of the services performed other than results or means" *(Matter of Concourse Ophthalmology Assoc. [Roberts]*, 60 NY2d 734, 736).

In the case at bar, the Board expressly found that "[t]he employer takes no deductions and other than advising the consultant[s] as to where they are to report for an assignment the employer does not direct in any matter the work that is performed". In view of the Board's finding of a lack of control over any important aspect of the services performed by the consultants, the determination cannot be sustained, even under the less stringent standard set forth in *Matter of Concourse Ophthalmology Assoc. (Roberts) (supra)*.

Although Board decisions finding an employer-employee relationship under fact patterns similar to that herein have been sustained *(see, e.g., Matter of Schwartz [Creative Tutoring —Roberts]*, 91 AD2d 778; *Matter of Rinaldi [General Off. Serv. Bur.—Corsi]*, *supra)*, in no case has the Board found an employment relationship despite an express finding that the alleged employer does not direct "in any matter" the work that is performed. Such inconsistent findings render the Board's decision irrational.

We have examined *Matter of Gentile Nursing Servs. (Roberts)* (106 AD2d 763, *revd on dissenting opn below* 65 NY2d 622), relied upon by the dissent, and find that case distinguishable on its facts.

Decision reversed, with costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith. Mahoney, P. J., Casey, Yesawich, Jr., and Harvey, JJ., concur.

Main, J., dissents and votes to affirm in a memorandum. Main, J. (dissenting). In my view, there is substantial evidence to support the Board's determination. Although, as the majority properly states, it is Securities' clients and not Securities itself which control the workday activities and routine of the consultants, such a finding is not inconsistent with a concomitant finding that an employment relationship exists. Here, it

is Securities which selects an individual from its list of consultants and sends him to one of its clients for an interview. Once the consultant's duties for the client are completed, the consultant must submit a time sheet to Securities after such time sheet has been verified by the client. The actual amount paid to such consultant is based upon an hourly rate which has been determined by an agreement between the consultant and Securities, not Securities' client. Finally, payments from the client for the consultant's services are forwarded not to the consultant, but to Securities.

To my mind, the foregoing facts constitute the "substantial evidence of control over important *aspects* of the services performed other than results or means" *(Matter of Concourse Ophthalmology Assoc. [Roberts],* 60 NY2d 734, 736 [emphasis supplied]) of which the majority speaks. Indeed, the facts of this case are not materially different from those presented in *Matter of Gentile Nursing Servs. (Roberts)* (106 AD2d 763, *revd on dissenting opn below* 65 NY2d 622), wherein it was noted by the dissent in this court that the facts of that case demonstrated "active employer direction and control of client contact, of the employee's wages, and of the billing and collection from clients * * * symptomatic of an employer-employee relationship" *(id.,* p 765 [Yesawich, Jr., J., dissenting]). On such authority, I would affirm the Board's decision.