■ In the Matter of HTA OF NEW YORK, INC., Appellant. COMMISSIONER OF LABOR, Respondent. [680 NYS2d 725] —Mikoll, J. P. Appeal from a decision of the Unemployment Insurance Appeal Board, filed April 17, 1997, which, upon reconsideration, adhered to its prior decision assessing HTA of New York, Inc. with additional unemployment insurance contributions.

The issue here is whether HTA of New York, Inc. exercised sufficient direction and control over the services of therapists who engaged its services to establish their status as employees by substantial evidence.

HTA operates a home referral agency which provides services to patients confined in their homes by referring them to therapists. Therapists and clients are secured via advertising in telephone directories and by word-of-mouth information disseminated in the profession. The Unemployment Insurance Appeal Board found general control of the therapists by HTA and the existence of an employer-employee relationship, citing to *Matter of Concourse Ophthalmology Assocs. (Roberts)* (60 NY2d 734) and *Matter of Goldstein, P. C. (Roberts)* (61 NY2d 937).

Both decisions cited base their determinations in cases relating to professionals on substantial evidence of control over important aspects of the services performed rather than control over results or means. In *Matter of Concourse Ophthalmology Assocs. (Roberts)* (*supra*), the employer's control included the following: the patients were the employer's, the hours worked by the professionals occurred on the employer's premises, the hours worked were for the most part regularly scheduled rather than occasional or sporadic, appointments were made by the employer's receptionist, fees were fixed by the employer, services were rendered on the employer's premises, and billing and collection were taken care of by the employer. The situation in *Matter of Goldstein, P. C. (Roberts)* (*supra*) is very similar to the extent of the control exercised by the employer over the professional. Both cases are of 1984 vintage. The control exercised in the cited cases is substantial and significant. The instant case, on the other hand, bears little resemblance to these cases. Outside of HTA's collection of fees for the therapists, the record fails to disclose that it exercised any control over important aspects of the services performed.

The contract between HTA and each therapist herein is a simple document. The therapist declares himself to be an inde-

pendent business entity who is in compliance with all Federal, State and local laws regarding business permits and licenses that may be required to carry on the business tasks to be performed, and states that the therapist is engaged in similar activities for other clients and not only for HTA. In the document the parties agree that HTA will engage the therapist for therapy services and that payment will be made pursuant to a mutually agreed upon case-by-case basis dependent on several factors. The therapist is to submit invoices for payment to HTA and supply all materials and equipment for the designated therapy. The therapist retains the sole right to control or direct the manner in which the services described are to be performed. No payroll or employment taxes are to be withheld or paid with respect to payments to therapists, and HTA does not obtain workers' compensation insurance for the therapists.

The record discloses that HTA has surrendered any right to inspect the work of the therapists. HTA does not screen its therapists and it does not set a fee. The therapists are free to exercise other professional associations and HTA does not solicit therapists. The therapist determines whether a patient will be accepted or rejected and it is the therapist who deals directly with the patient's physician and finds replacements when unable to do the work. The therapist is paid only if the patient pays HTA and complaints are made directly to the therapist. HTA is but one of many purchasers of the services of therapists, who operate their own businesses and use HTA to supplement their incomes.

The referral and collection tasks performed by HTA do not constitute substantial control over the services rendered by the therapists. We conclude that an employer-employee relationship has not been established by substantial evidence.

Crew III, White, Yesawich Jr. and Spain, JJ., concur. Ordered that the decision is reversed, with costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this court's decision.